UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>RUDOLPH W. GIULIANI,<br><br>*Defendant*, | Civil Action No. 1:21-cv-00213-CJN |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT**

### I. PRELIMINARY STATEMENT

Plaintiffs U.S. Dominion, Inc. ("***Dominion Parent***"), Dominion Voting Systems, Inc. ("***Dominion USA***"), and Dominion Voting Systems Corporation ("***Dominion Canada***" and, together with Dominion Parent and Dominion USA, "***Dominion***" or "***Plaintiffs***") have sued Defendant Rudolph W. Giuliani ("***Defendant***" or "***Giuliani***") on a sole consolidated count of defamation *per se*. *See* Plaintiffs' Original Complaint [Doc. 1] ("***Compl.***") at Count One. The defamation claim alleges Giuliani made approximately 50 different false and defamatory statements regarding Plaintiffs. Compl. at ¶ 178.

Giuliani denies that he has defamed Plaintiffs or that he has engaged in any wrongful or malicious conduct toward Plaintiffs. Should this matter reach legal or factual adjudication on the merits, Giuliani will provide a vigorous and complete response. However, as discussed below, because Plaintiffs have not sufficiently pleaded subject matter jurisdiction, have failed to state a

1

claim, and have failed to properly and adequately plead special damages, the Complaint must be dismissed pursuant to FED. R. CIV. P. 12(b)(1), (6), and FED. R. CIV. P. 9(g).

## II. PERTINENT ALLEGATIONS IN THE COMPLAINT

The Dominion Parent is a Delaware corporation headquartered in Colorado. Compl. at ¶ 5. Dominion USA is likewise a Delaware corporation headquartered in Colorado. *Id.* at ¶ 6. Dominion Canada is an Ontario corporation headquartered in Ontario. *Id.* at ¶ 7. Dominion USA and Dominion Canada are both wholly owned by the Dominion Parent. *Id.* at ¶ 96. Plaintiffs plead that the statements complained of are defamatory and defamatory *per se*. *Id.* at ¶ 184. Plaintiffs have pleaded that D.C. law applies to the defamation claim. *Id.* at ¶ 183. Plaintiffs have sought punitive damages (*id.*), damages for employees being stalked, harassed and threatened (*id.* at ¶ 185), damages expended to remedy the alleged defamation and protect its employees' lives (*id.*), lost profits (*id.*), damage to reputation (*id.*), and actual, presumed, and "other" damages (*id.* at ¶ 186). Plaintiffs total their damages at not less than $651,735,000.00 in compensatory damages and an equal amount of punitive damages. *See id.* at Prayer for Relief. Plaintiffs pleaded the defamation claim collectively as "Dominion" and do not delineate specific damages between the three entities. *See id.* at ¶¶ 183-86.

## III. SUMMARY OF ARGUMENT

The Court should dismiss the Complaint for at least <u>three</u> (3) reasons. <u>First</u>, because Plaintiffs are corporations, they may not recover any damages other than lost profits. <u>Second</u>, because lost profits are special damages, Plaintiffs are required to plead them with particularity and have failed to do so. <u>Finally</u>, Plaintiffs cannot claim a "single business enterprise" injury for damages sustained as corporate family of companies.

## IV.     ARGUMENTS AND AUTHORITIES

### A. Overview Of Pertinent Legal Standards.

#### 1. *F*ED*. R. C*IV*. P. 12(b)(1) – Standing.*

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "presents a threshold challenge to the Court's jurisdiction[.]" *Curran v. Holder*, 626 F.Supp.2d 30, 32 (D.D.C. 2009) (quoting *Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16, 21 (D.D.C. 2007)). In evaluating a Rule 12(b)(1) challenge, this Court must "presume[ ] that a cause lies outside [the federal courts'] limited jurisdiction" and place "the burden of establishing the contrary ... upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Moreover, "'the [p]laintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (alterations in original) (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 1350 (2d ed. 1987)). A plaintiff must satisfy both: (1) the requirements of Article III of the United States Constitution and (2) the court-crafted doctrine of prudential standing for the suit to proceed. *Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 270 F. Supp. 3d 158, 163 (D.D.C. 2017).

To satisfy Article III, a plaintiff must establish that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). To establish injury in fact, a plaintiff must show that it suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual". *Luja*n, 504 U.S. at 560. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* at n.1;

3

*see also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("distinct") *and Allen v. Wright*, 468 U.S. 737, 751 (1984) ("personal").

In addition to these constitutional requirements, courts also must consider a set of prudential principles, which are judicially self-imposed limits on the exercise of federal jurisdiction. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997). Prudential standing, like Article III standing, is a threshold, jurisdictional issue. *Deutsche Bank Nat. Tr. Co. v. FDIC*, 717 F.3d 189, 194 n.4 (D.C. Cir. 2013). Federal courts may consider prudential standing before Article III standing, and accordingly, may hold that a party lacks prudential standing as an alternative to deciding whether the party has Article III standing. *Id.* Prudential standing includes the doctrine known as the "shareholder standing rule," which holds that a parent corporation cannot bring an action on behalf of its subsidiary. *See Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990). "No shareholder—not even a sole shareholder—has standing in the usual case to bring suit in his individual capacity on a claim that belongs to the corporation." *Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984) (citing *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439-40 (9th Cir.1979)).

   2. **F**ED**. R. C**IV**. P. 12(b)(6) – Failure To State A Claim.**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations that, if accepted as true, would state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### 3. FED. R. CIV. P. 9(g) – Pleading Special Damages.

Rule 9(g) requires that special damages be "specifically stated" and that the plaintiff allege actual damages with "particularity" by specifying pleading facts showing that such damages were the "natural and direct result" of the defendant's conduct. *See Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002) (citations omitted). A plaintiff can satisfy this pleading obligation by identifying either particular customers whose business has been lost or facts showing an established business and the amount of sales before and after the disparaging publication, along with evidence of causation. *See id.*

### B. Plaintiffs May Only Recover Lost Profits.

In the District of Columbia,[1] in order to state a claim of defamation, "plaintiff must allege and prove four elements: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (quoting *Crowley v. North Am. Telecomms. Ass'n*, 691 A.2d 1169, 1173 n. 2 (D.C. 1997)). In other words, the defamation must be *per se* (presumed reputationally harmful without the need for proof) or that it causes special damages (*per quod* defamation). *See generally F.A.A. v. Cooper*, 566 U.S.

---

[1] Plaintiffs have pleaded for the application of D.C. law to their defamation claim (Compl. at ¶ 183) and Giuliani does not dispute that D.C. law applies.

284, 295-99 (2012) (discussing libel *per quod* as only being actionable upon the pleading and proving of special damages).

However, in D.C., a corporation suing for defamation may only recover actual damages in the form of lost profits. *Martin Marietta Corp. v. Evening Star Newspaper Co.*, 417 F. Supp. 947, 955 (D.D.C. 1976) ("The law of libel has long reflected the distinction between corporate and human plaintiffs by limiting corporate recovery to actual damages in the form of lost profits."). The *Martin Marietta* court explained the policy reasons for this damages limitation:

> This traditional doctrine does no more than recognize the obvious fact that a libel action brought on behalf of a corporation does not involve "the essential dignity and worth of every human being" and, thus, is not "at the root of any decent system of ordered liberty." […] Corporations, which do not possess private lives to begin with, must similarly be denied full protection from libel. […] It makes no sense to apply these standards to a corporation, which, regardless of its activities, never has a private life to lose.

*Id.* *Martin Marietta* is still good law in this Circuit and controls Plaintiffs' defamation claim here. *See, e.g., Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1156 (D.C. Cir. 1985) (citing *id.* and holding that a corporation suing for defamation "may only recover actual damages in the form of lost profits"); *Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*, 909 F.3d 446, 461–62 (D.C. Cir. 2018) (same).

Therefore, even assuming that the complained of statements were defamatory of Plaintiffs *per se* (that is, the statements disparaged Plaintiffs on their face without the need for consideration of extrinsic evidence), Plaintiffs are limited to the recovery of only special damages in the form of lost profits since they are corporations. Therefore, Plaintiffs fail to state a claim on their defamation *per se* claim to the extent they seek recovery of any damages other than lost profits. Accordingly, Plaintiffs' defamation *per se* claim must be dismissed pursuant to Rule 12(b)(6) to the extent it seeks damages for: (1) damages for employees being stalked, harassed and threatened

(Compl. at ¶ 185); (2) damages expended to remedy the alleged defamation and protect its employees' lives (*id.*); (3) damage to reputation (*id.*); and (3) presumed, and "other" damages (*id.* at ¶ 186) because these damages theories fail to state claims for which relief can be granted.

### C. Plaintiffs Have Failed To Plead Lost Profits With Particularity.

Although Plaintiffs have pleaded for lost profits damages and "actual damages" (Compl. at ¶ 185), which, as discussed above, are their only cognizable theory of redress for corporate defamation, they have failed to adequately plead those damages.[2] Lost profits are synonymous with "actual damages" and are considered "special damages". *See, e.g., Cooper*, 566 U.S. at 295-99 (collecting cases and recognizing "actual" damages in defamation are specific pecuniary losses that must be specially pleaded and proven as special damages); *Szymkowicz v. Frisch*, No. CV 19-3329 (BAH), 2020 WL 4432240, at *6, n.8 (D.D.C. July 31, 2020) (recognizing lost profits as special defamation damages); *Golden Palace, Inc. v. Nat'l Broad. Co.*, 386 F. Supp. 107, 110 (D.D.C. 1974) (considering lost profits a form of special damages in defamation case). Special damages are subject to the heightened pleading requirements of Rule 9(g). *See Browning*, 292 F.3d at 245.

Plaintiffs have done nothing more than generally allege that they have "lost profits" damages resulting from Giuliani's alleged "viral disinformation campaign" in a specified dollar amount. Compl. at ¶ 185 and Prayer for Relief. Rule 9(g) requires much more. *See Fowler v. Curtis Pub. Co.,* 182 F.2d 377, 378 (D.C. Cir. 1950) (affirming a dismissal for failure to plead special damages where the plaintiffs alleged only that "as a result of the malicious publication" they lost a total dollar amount of business). Plaintiffs are required to plead their lost profits

---

[2] And given the exorbitant figure of $651,735,000.00 in "compensatory" damages that Plaintiffs have pleaded, lost profits is the only *plausible* damages theory that could support such a seemingly *implausible* amount of damages. *See Iqbal*, 556 U.S. at 678.

7

damages by detailing either specific customers allegedly lost due to Giuliani's conduct, or allegations of "before and after" sales coupled with evidence that a drop in sales was due to Giuliani's conduct. *Browning*, 292 F.3d at 245. Because the Complaint contains no such allegations, it completely fails to satisfy Rule 9(g). Therefore, dismissal is warranted pursuant to Rule 9(g) and Rule 12(b)(6) for failure to state a claim. *See Browning*, 292 F.3d at 245-46 (dismissing for failure to state a claim for non-compliance with Rule 9(g)).

### D.  Plaintiffs Cannot Recover "Single Business Enterprise" Damages.

Plaintiffs have pleaded the entirety of their Complaint as "Dominion", which is defined in the Complaint as including all three of the Plaintiff corporations – the Dominion Parent and its wholly owned US and Canadian subsidiaries. Compl. at p. 2, n.1. Every allegation in the Complaint averring liability and damages refers to the collective acronym of "Dominion". *See generally* Compl. Plaintiffs have not alleged any injury specific to a particular Plaintiff. *See generally id.* Rather, Plaintiffs alleged a collective claim for defamation and collective claim for damages. *See id.* at ¶¶ 177-186. This is improper, and fails to establish both Article III and prudential standing, requiring dismissal pursuant to Rule 12(b)(1).

Article III standing requires that each particular Dominion Plaintiff plead a cause of action and an injury that is unique and personal to that individual Plaintiff. *See, e.g., Luja*n, 504 U.S. at 560 n.1. At a minimum, this should involve allegations sufficient to demonstrate the distinctive business operations of the Dominion companies and how they were each individually and personally injured by the alleged defamation. Do the subsidiaries obtain all of the contracts with state and local governments for election services and technologies or is the parent in any way involved? What is the interplay between the Plaintiffs in providing election services and technologies? These are basic facts regarding the business operations of the Plaintiffs that should

have been included in the Complaint to create a plausible theory of injury and redress. Because the Plaintiffs have not each pleaded their own distinct corporate injury—which, as discussed above, must be lost profits—they have failed to meet their burden of demonstrating Article III standing.

Alternatively, even if Plaintiffs had sufficiently pleaded Article III standing, there is no question that the Plaintiffs do not have prudential standing to recover *each other's* damages. The shareholder standing rule disallows a shareholder—the Dominion Parent—from recovering damages for corporations it owns—Dominion USA and Dominion Canada—even if that shareholder wholly owns the corporations. *See Wash. Tennis*, 270 F. Supp. 3d at 163-64; *Regan*, 746 F.2d at 873 n.14. Thus, the Dominion Parent cannot sue Giuliani for damages suffered by its subsidiaries, Dominion USA and Dominion Canada. Those claims would belong to the subsidiaries – not the Dominion Parent.

Based on this principle it is likewise axiomatic that the Dominion subsidiaries cannot sue for injuries to the Dominion Parent or for injuries to one another as affiliated companies. *Sec. Indus. & Fin. Mkts. Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 407 (D.D.C. 2014) ("Under these same principles, a subsidiary cannot bring a suit on behalf of its parent, let alone other members of its extended corporate family.") (citations omitted). As this Court has recognized, corporate families cannot set up a structure to insulate themselves from the liabilities of business operations only to disavow the corporate form and treat one another as "alter egos" whenever it becomes advantageous for them. *See Wash. Tennis*, 270 F. Supp. 3d at 164-65 (citing *id.* at 406 and *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 155 (D.C. 2000)).

Accordingly, the Complaint must be dismissed pursuant to Rule 12(b)(1) because Plaintiffs have failed to establish Article III standing by pleading distinct legal injuries that are personal and unique to each of the corporate Plaintiffs. In addition, the Plaintiffs lack prudential standing under

the shareholder standing rule to recover damages to one another based on their parent-subsidiary or affiliate relationship.[3]  In sum, Plaintiffs have pleaded a "single business enterprise" theory of recovery that fails to demonstrate that each have standing and that each have more than $75,000.00 in special damages for purposes of diversity jurisdiction.  For these reasons, therefore, the Court should dismiss for lack of subject matter jurisdiction.

## V. CONCLUSION

For all of the reasons discussed herein, the Court should dismiss the Complaint for lack of subject matter jurisdiction, failure to state a claim, and failure to properly plead damages.

Respectfully submitted,

By: /s/ Joseph D. Sibley IV

CAMARA & SIBLEY L.L.P.

Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701
Telephone:  (713) 966-6789
Fax:  (713) 583-1131
Email:  sibley@camarasibley.com

**ATTORNEYS FOR RUDOLPH W. GIULIANI**

---

[3] Courts sometimes dismiss on this basis under Rule 12(b)(1) and sometimes under Rule 12(b)(6).  *See, e.g., Whelan v. Abell*, 953 F.2d 663, 671-72 (D.C. Cir. 1992).  Giuliani contends that Rule 12(b)(1) is the more appropriate dismissal mechanism based on the shareholder standing rule, but moves, alternatively for dismissal under Rule 12(b)(6).