**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| U.S. DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>RUDOLPH W. GIULIANI,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:21-cv-00213-CJN |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT**

I.      **INTRODUCTION**

Plaintiffs U.S. Dominion, Inc.; Dominion Voting Systems, Inc.; and Dominion Voting Systems Corporation (collectively, "Plaintiffs") sued Defendant Rudy Giuliani for defamation per se based on the viral disinformation campaign Giuliani waged against Plaintiffs.  Giuliani moved to dismiss Plaintiffs' suit for (1) failure to state a claim due to failure to adequately plead damages, and for (2) lack of jurisdiction based on failure to adequately plead injury-in-fact and the amount in controversy. Neither of Giuliani's arguments has merit.

*First*, Giuliani ignores that Plaintiffs' claims allege defamation per se. *See* Compl., at p. 76 (Count One – Defamation Per Se). A claim of per se defamation sufficiently establishes harm by itself. Indeed, Giuliani concedes that Plaintiffs adequately pleaded the first three elements of defamation. Giuliani challenges only the fourth element of defamation: actual or legal harm. Giuliani's argument ignores that for claims of defamation per se, the law presumes legal harm. Plaintiffs—including corporations—are not required to plead special damages. This fact alone is enough to deny Giuliani's motion. But even if Plaintiffs were required to plead special damages, Plaintiffs' allegations plead special damages with more than enough detail to satisfy Rule 9(g) of the Federal Rules of Civil Procedure.

*Second*, this Court has diversity jurisdiction over this suit, and each Plaintiff has alleged facts to establish Article III standing. Plaintiffs have pleaded special and general damages substantially in excess of $75,000. Even wrongly assuming special damages are required, Dominion has detailed many amounts over $75,000, when even one example suffices to obtain jurisdiction. And Giuliani's claim that U.S. Dominion, Inc., is seeking damages on behalf of its subsidiaries in violation of the "shareholder standing rule" misconstrues Plaintiffs' complaint. Each plaintiff is seeking damages for injuries Giuliani caused to that plaintiff, which is precisely

why all three plaintiffs joined in the complaint. And each plaintiff has faced concrete and imminent harm from Giuliani's defamatory statements, as Article III requires.

Because Plaintiffs have adequately pleaded their claim for defamation per se, and because each plaintiff enjoys Article III standing, Plaintiffs respectfully urge the Court to deny Giuliani's motion.

## II.   <u>LEGAL STANDARDS</u>

<u>Rule 12(b)(6)</u>: "When evaluating a motion to dismiss, the Court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged*." Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Hous. & Urb. Dev.*, 415 F. Supp. 3d 215, 221 (D.D.C. 2019). Construing all of the plaintiff's factual allegations as true, to survive a Rule 12(b)(6) motion to dismiss, the claim to relief must be "'plausible on its face,' enough to 'nudge [the] claims across the line from conceivable to plausible.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[D]ismissal is inappropriate unless the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In the defamation context, District of Columbia courts have held that a claim survives a 12(b)(6) motion to dismiss if "the contested statements are both verifiable and reasonably capable of defamatory meaning." *Franklin v. Pepco Holdings, Inc. (PHI)*, 875 F. Supp. 2d 66, 74 (D.D.C. 2012).

<u>Rule 9(g)</u>: Under Rule 9(g) of the Federal Rules of Civil Procedure, if "an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). In the defamation context, "the complaint must set forth precisely in what way the special damage resulted from the spoken or written words; it is not sufficient to allege generally that the plaintiff has suffered special damages, or that the party has been put to great costs and expenses." *Fowler v. Curtis Pub. Co.*,

182 F.2d 377, 379 (D.C. Cir. 1950); *see also Browning v. Clinton*, 292 F.3d 235, 246 (D.C. Cir. 2002) (explaining that a defamation plaintiff must explain "the precise nature of the losses as well as the way in which the special damages resulted from the allegedly false publication" to recover special damages).

Rule 12(b)(1): "In deciding a motion to dismiss challenging the Court's subject-matter jurisdiction under Rule 12(b)(1), a court must 'accept as true all of the factual allegations contained in the complaint' and draw all reasonable inferences in favor of the plaintiff." *Schmidt v. U.S. Capitol Police Bd*., 826 F. Supp. 2d 59, 65 (D.D.C. 2011). Article III standing is required for subject matter jurisdiction in all federal courts. *NB ex rel. Peacock v. D.C*., 682 F.3d 77, 81 (D.C. Cir. 2012). Article III standing requires an injury-in-fact. *See id.* To establish injury-in-fact for Article III standing: "(1) [a plaintiff] must have suffered an injury in fact that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) the injury must be 'fairly traceable to the challenged action of the defendant'; and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.*

Applicable Law: Contrary to Giuliani's assertions, Dominion did not plead that D.C. law applies here. Rather, Dominion noted the availability of punitive damages against Giuliani under D.C. law. Which state's substantive law applies to a dispute is governed by the forum state's choice-of-law rules. *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 27 (D.D.C. 2019). D.C.'s choice-of-law rules employ a "modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute." *Id.* Here, the states with a significant relationship to the dispute include not only D.C., but also New York (Giuliani's residence and where Dominion conducts considerable business) and Colorado (Dominion's headquarters). In fact, in a related case brought by Plaintiffs against Fox News Media, the Court

recently entered a stipulation that the parties there agree New York substantive law applies to the dispute for choice of law purposes. *US Dominion, Inc. et al. v. Fox News Network, LLC*, Stipulation and Order Designating New York Law and Waiving *Forum Non Conveniens*, No. N21C-03-257 EMD (Del. Super. Ct. Apr. 27, 2021). For the purpose of Giuliani's motion, however, which state's substantive law applies is irrelevant because the elements of defamation are the same in all three states.

## III.   ARGUMENT

### A.   Giuliani concedes that Plaintiffs stated a claim for the first three elements of defamation.

Giuliani does not contest that Plaintiffs adequately pleaded the first three elements of defamation, regardless which state's substantive law applies. Under D.C. law, which Giuliani assumes applies here, a defamation plaintiff must show "(1) that he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm." *Howard v. Fed. Express Corp.*, 316 F. Supp. 3d 234, 244 (D.D.C. 2018). New York[1] and Colorado[2] similarly define defamation according to these four elements.

---

[1] In New York, "to prove a claim for defamation, the plaintiff must show: (1) a false statement that is (2) published to a third party (3) without privilege or authorization and that (4) plaintiff is caused harm, unless the statement is one of the types of publications actionable regardless of harm." *Cardali v. Slater*, 56 Misc. 3d 1003, 1008, 57 N.Y.S.3d 342, 346 (N.Y. Sup. Ct.), *judgment entered*, (N.Y. Sup. Ct. 2017), *and aff'd*, 167 A.D.3d 476, 89 N.Y.S.3d 176 (2018).

[2] In Colorado, "[t]he elements of defamation are: (1) a defamatory statement about another, (2) published to a third party, (3) with the publisher's fault amounting to at least negligence, and (4) when a statement is not defamatory per se, the plaintiff must plead special damages." *Mondragon v. Adams Cty. Sch. Dist. No. 14*, No. 116CV01745LTBKMT, 2017 WL 733317, at *13 (D. Colo. Feb. 24, 2017).

Giuliani does not contest that Plaintiffs adequately pleaded the first three elements of defamation: (1) that his statements about Plaintiffs were false and defamatory; (2) that he made those statements to a third party; and (3) that Giuliani made those statements not only with at least negligence, but also with actual malice. Rather, Giuliani concedes that Plaintiffs have stated a claim for the first three elements of defamation. Giuliani challenges only the last element of defamation: actual or legal harm. Plaintiffs adequately pleaded all four elements of defamation, including harm.

**B.    Plaintiffs adequately pleaded actual or legal harm, the fourth element of defamation.**

Giuliani fails to show that Plaintiffs inadequately pleaded harm. *First*, Plaintiffs sued Giuliani for defamation per se, and the law presumes damages for defamation per se claims. Plaintiffs, including corporations, are not required to plead special damages. *Second*, even if Plaintiffs needed to plead special damages, Plaintiffs' allegations easily clear the Rule 9(g) threshold.

**1.    Plaintiffs need not plead special damages for defamation per se because the law presumes damages.**

Plaintiffs sued Giuliani for defamation per se. *See* Compl., at p. 76 (Count One – Defamation Per Se). In defamation per se cases, it is "elementary" that "special damages need neither be alleged nor proved" because the law presumes damages. *See, e.g.*, *Curtis Pub. Co. v. Vaughan*, 278 F.2d 23, 27 n.11 (D.C. Cir. 1960) ("It is elementary that in such event special damages need neither be alleged nor proved."); *Roper v. Great Atl. & Pac. Tea Co.*, 164 A.2d 478, 480 (D.C. 1960) ("Since we hold that the words were slanderous per se, it was not necessary that plaintiff prove special or pecuniary damages."); *Franklin v. Pepco Holdings, Inc. (PHI)*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012) (explaining that a defamation complaint must plead either "a special

harm" or that the "statement is actionable as a matter of law irrespective of special harm ('per se')"). Statements that are defamatory per se against corporations include "false allegations of criminal conduct" that injure the corporation's business and are "actionable without proof of special damages." *Grossman v. Goemans*, 631 F. Supp. 972, 974 (D.D.C. 1986); *see also* 53 C.J.S. Libel and Slander; Injurious Falsehood § 60 ("In order for words to be defamatory per se as against a corporation, the words must, on their face, injure the corporation in the business or trade in which it was actually engaged as an existing, going corporation, at the time the publication was made."). Thus, when a plaintiff (including a corporation) alleges defamation per se, the plaintiff alleges legal harm and need not special damages. *See Westfahl v. D.C.*, 75 F. Supp. 3d 365, 375 (D.D.C. 2014) ("A false allegation of criminal wrongdoing is defamation per se, requiring no showing of special damages."); *see also Metro. Opera Ass'n v. Loc. 100*, No. 00CIV3613LAP, 2005 WL 1712241, at *4 (S.D.N.Y. July 19, 2005) (holding that "there is, in fact, no special damage rule covering a corporation's defamation claims"); *E.I. Du Pont de Nemours & Co. v. Nashville Banner Pub. Co.*, 12 F.2d 231, 232 (6th Cir. 1926) ("The law is clearly settled that a corporation may recover for a publication libelous per se, without alleging special damage, if the defamatory article tends to injure it in its trade or business.").

New York and Colorado law also presume damages for defamation per se claims. *See Metro Opera Ass'n*, 2005 WL 1712241, at *4; *Sharratt v. Hickey*, 20 A.D.3d 734, 735, 799 N.Y.S.2d 299, 301 (2005) ("Plaintiffs in a defamation action must prove special damages, meaning economic or financial loss, unless they fit within an exception in which damages are presumed, i.e., defamation per se."); *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004) ("If a libelous communication is defamatory per se, damage is presumed, and a plaintiff need not plead special

damages."). Thus, simply by alleging defamation per se, Plaintiffs alleged the legal harm required to satisfy the Rule 12(b)(6) standard.

The cases Giuliani cites do not suggest otherwise. Giuliani argues that corporate plaintiffs may recover only lost profits, not damages for mental anguish, and thus corporate plaintiffs must plead special damages. Mot. at 6. That is not the law. None of the cases Giuliani cites hold that a corporate plaintiff may not recover for defamation per se, nor do any of the cases hold that a corporate plaintiff must plead special damages to recover for defamation. Rather, the cases Giuliani cites do not involve defamation claims and merely note in dicta the common law rule that corporate plaintiffs generally may not recover damages for mental anguish in defamation suits (unlike natural persons) but may recover lost profits. *See Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*, 909 F.3d 446, 461 (D.C. Cir. 2018) (distinguishing between corporations and natural persons to analyze whether Congress enacted an improper Bill of Attainder in Section 1634 of the National Defense Authorization Act); *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1156 (D.C. Cir. 1985) (concluding that section 2680(h) of the Federal Tort Claims Act, which excepts claims for "libel" and "slander," also excepts claims for injurious falsehoods); *see also* § 9:52.50.Damages recoverable when the plaintiff is a corporation or organization, Rodney Smolla, 2 Law of Defamation § 9:52.50 (2d ed.) ("The damages recoverable by a corporation in a defamation action include both economic and non-economic harms, and are akin to the damages recoverable by a natural person, with the exclusion of internal emotional distress and anguish."). These cases do not hold that corporate plaintiffs are required to plead special damages for defamation per se. In fact, the District of Columbia has expressly <u>declined</u> to adopt a heightened pleading standard for defamation cases. *Oparaugo v. Watts*, 884 A.2d 63, 76–77 (D.C. 2005) ("Although acknowledging the heightened pleadings rule existing in some jurisdictions, in

*Crowley*, this court did *not* specifically adopt the heightened pleading rule for defamation cases."); *MiMedx Grp., Inc. v. DBW Partners LLC*, No. CV 17-1925 (JDB), 2018 WL 4681005, at *4 (D.D.C. Sept. 28, 2018) (refusing to apply a heightened pleading standard to a corporate plaintiff).

Giuliani mainly relies on *Martin-Marietta Corp. v. Evening Star Newspaper*, 417 F. Supp. 947 (D.D.C. 1976), to argue that a corporate plaintiff must plead special damages to recover for defamation. *Martin-Marietta* says no such thing. In the first place, the *Martin-Marietta* plaintiff sued for libel, not libel per se, and *Martin-Marietta* says nothing to undercut the "elementary" principle that the law assumes damages for defamation per se claims. *See Curtis*, 278 F.2d 23 at n.11; *Westfahl*, 75 F. Supp. 3d at 375. Further, at issue in *Martin-Marietta* was "what *standard of fault* should apply to a corporation alleging defamation against a member of the mass media," as this Court later reiterated in *Metastorm, Inc. v. Gartner Grp., Inc.*, 28 F. Supp. 2d 665, 669 (D.D.C. 1998) (emphasis added). *Martin-Marietta* did not address the pleading standard for defamation damages at all. *See id.*; *see also Martin-Marietta*, 417 F. Supp. at 955-56. Rather, *Martin-Marietta* concluded that appropriate standard of fault is actual malice in a defamation case "brought by a corporation against a member of the mass media where the publication in issue concerned matters of legitimate public interest." *Metastorm*, 28 F. Supp. 2d at 669. To reach this conclusion, like *Kaspersky Lab* and *Art Metal-U.S.A.*, the *Martin-Marietta* court noted in dicta the traditional common law rule that corporate plaintiffs generally may recover only actual damages, not damages for mental anguish in defamation suits, unlike natural persons. *Martin-Marietta*, 417 F. Supp. at 955. But like the other cases Giuliani cites, *Martin-Marietta* said nothing about the required pleading standard for damages in defamation per se cases. Giuliani's reliance on *Martin-Marietta*

is thus inapposite because it does not address the pleading requirement for defamation damages in general, much less for defamation per se.[3]

In sum, Plaintiffs need not allege special damages under any potentially applicable state law because Plaintiffs have alleged defamation per se, which presumes damages for corporate defendants.

### 2.    In any event, Plaintiffs adequately pleaded special damages.

Even if Plaintiffs needed to plead special damages, Plaintiffs adequately pleaded special damages, including lost profits, in more than enough detail to satisfy Rule 9(g). Rule 9(g) requires that special damages be "specifically stated." Fed. R. Civ. P. 9(g). In the defamation context, this requires a defendant claiming special damages to set "forth the precise nature of the losses as well as the way in which the special damages resulted from the allegedly false publication." *Schoen v. Washington Post*, 246 F.2d 670, 672 (D.C. Cir. 1957).

Plaintiffs have pleaded sufficient facts to "set forth the precise nature of" Plaintiffs' losses, as well as how those losses resulted from Giuliani's false statements. In particular, Plaintiffs alleged these facts, among others, about the precise nature of Plaintiffs' losses:

- Plaintiffs' expenses to ensure the security and safety of its employees and board members. *See* Compl. ¶ 126 ("Because of these threats and numerous others, Dominion has made significant expenditures to protect its people from harm— including by employing on-site police and security. Since the beginning of the viral disinformation campaign, Dominion has spent more than $565,000 on private security for the protection of its people.").

---

[3] In any event, *Martin-Marietta*'s standard of fault does not apply because Giuliani is not a member of the mass media, and even if *Martin-Marietta* did apply, Plaintiffs pleaded actual malice, and Giuliani has conceded that Plaintiffs adequately pleaded actual malice.

- Plaintiffs' expenses incurred to date to mitigate the harm caused by Giuliani's defamatory statements. Compl. ¶ 128 ("As a direct result of the viral disinformation campaign, Dominion has been forced to make significant expenditures in an attempt to mitigate the harm to its reputation and business. To date, Dominion has incurred expenses of more than $1,170,000 to that end.").

- The pre-defamation value of Plaintiffs' business. *See* Compl. ¶ 135 ("In addition, the viral disinformation campaign has irreparably damaged Dominion's reputation and destroyed the resale value of a business that was worth between $450 and $500 million before the viral disinformation campaign.").

- Dominion's contracting practices and high rates of contract renewal before the defamatory statements. *See* Compl. ¶ ("[Plaintiffs'] contracts are typically multi-year contracts and range from tens of thousands of dollars to over a hundred million dollars, depending on the jurisdiction and scope of the contract. Given the nature of the U.S. election system and the voting services industry, Dominion's contracts have historically been long-term with high renewal rates.").

- The projection of Plaintiffs' lost profits as a result of Giuliani's defamatory statements based on Dominion's historical record, contract pipeline, and new business capture rates. *See* Compl. ¶ 135 ("Based on Dominion's historic financial track record, contract pipeline, retention and renewal rates, and new business capture rates, . . . current projections show lost profits of $200 million over the next five years, when reduced to present value.").

- The loss of new contracts and business opportunities as a result of Giuliani's disinformation campaign. *See* Compl. ¶ 135 ("As a result, elected officials, insurers,

and potential investors have been deterred from dealing with Dominion, putting Dominion's contracts in more than two dozen states and hundreds of counties and municipalities in jeopardy and significantly hampering Dominion's ability to win new contracts.").

Plaintiffs also specifically pleaded *how* those losses resulted from Giuliani's defamatory statements, as Rule 9(g) requires. For example:

- Following Giuliani's defamatory statements about Plaintiffs, "countless people foreseeably began republishing his defamatory statements." Compl. ¶ 106. Plaintiffs' Complaint teems with examples of individuals repeating Giuliani's defamatory statements. *See, e.g.*, Compl. ¶¶ 106-114.

- "[T]ens of millions of people believed the defamatory falsehoods about Dominion." Compl. ¶ 115.

- Plaintiffs and their employees have also been targeted and received calls for jail time and death threats, requiring Plaintiffs to incur expenses to protect their employees. Compl. ¶ 118, 128.

- "Giuliani . . . used his substantial Twitter following to leverage false accusations about Dominion to exert overt political pressure on Governor Ducey of Arizona and Governor Kemp of Georgia," whose states both use Dominion voting machines. Compl. ¶ 130.

- Since Giuliani started his disinformation campaign, "state legislators in various states in which Dominion has contracts—including Florida, Louisiana, Michigan, and Pennsylvania—have stated their intent to review and reassess those contracts." Compl. ¶ 132.

These are just a few exemplars of the detailed allegations Plaintiffs set forth in their Complaint explaining "the precise nature of the losses" Plaintiffs incurred, "as well as the way in which the special damages resulted from the allegedly false publication." *Schoen*, 246 F.2d at 672. These categories of costs outlined in Plaintiffs' complaint are specific, detailed, and easily clear Rule 9(g)'s requirements. *See id.* Plaintiffs detailed the expenses incurred as a result of Giuliani's viral disinformation campaign (including expenses to ensure the safety of employees and to mitigate the cost of Giuliani's falsehoods), as well as Plaintiffs' anticipated business losses. These expenses and lost opportunities all affect Plaintiffs' bottom line and contribute to Plaintiffs' lost profits. *See Mercer Mgmt. Consulting, Inc. v. Wilde*, 920 F. Supp. 219, 238 (D.D.C. 1996) ("A number of different methods are permissible for estimating lost profits, including evidence of past performance by an established business, or profits made by others.").

The cases Giuliani cites do not suggest otherwise. Giuliani cites *Browning* for the proposition that Plaintiffs must "detail either specific customers allegedly lost" or "before and after" sales, Mot. at 7-8, but *Browning* holds neither. Instead, *Browning* sets forth the same standard announced in *Schoen*: a defamation plaintiff claiming special damages must allege "the precise nature of the losses as well as the way in which the special damages resulted from the allegedly false publication." 292 F.3d at 246 (quoting *Schoen*, 26 F.2d at 672). *Browning* explained by example that a plaintiff "*can* satisfy this pleading obligation" by alleging specific customers lost or sales before and after the defamatory statements. *Id.* (emphasis added). The plaintiff in *Browning*, however, fell far short of the detail alleged by Plaintiffs here. *Id.* The *Browning* plaintiff neither quantified her losses, nor identified any lost business relationships. *Id.* Further, she alleged "no facts suggesting causation." *Browning*, 292 F.3d at 246. By contrast, Plaintiffs have alleged

quantifiable losses, as well as identified business relationships in jeopardy as a result of Giuliani's statements.

The other case Giuliani relies on, *Fowler v. Curtis*, is likewise inapposite. *Fowler* did not consider special damages in the context of defamation, but disparagement, and thus is not relevant here. 182 F.2d 377, 379 (D.C. Cir. 1950). Even if *Fowler* were relevant, however, it adheres to the same standard announced in *Schoen* (i.e., the complaint "must set forth precisely in what way the special damage resulted from the spoken or written words"). *Id. Fowler* also makes clear that a plaintiff need not allege the loss of particular customers by name; instead, alleging a "general diminution in its business" is sufficient, so long as it includes "extrinsic facts showing that such special damages were the natural and direct result of the false publication." *Id.*

Nor does D.C. law prohibit Plaintiffs from seeking damages based on harm to Plaintiffs' reputation. Contrary to Giuliani's assertions, this Court has allowed corporate plaintiffs to pursue defamation claims based on damages stemming from loss of reputation. *See, e.g.*, *Airlie Found., Inc. v. Evening Star Newspaper Co.*, 337 F. Supp. 421, 431 (D.D.C. 1972) ("Plaintiffs also claim damages for the loss of reputation of Airlie Foundation [Inc.] and Dr. Head. Recovery of such general intangible damages is permissible without proof of actual loss . . ."). This is because "corporations may derive substantial financial value from their brands' reputations." *Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*, 909 F.3d 446, 461 (1st Cir. 2018). And "that is precisely the point: reputation is an asset that companies cultivate, manage, and monetize," so damage to a corporate plaintiff's reputation often affects the corporation's bottom line in the form of lost profits. *Id.*

Thus, even assuming allegations of special damages are required, Plaintiffs have adequately alleged special damages under Rule 9(g). Unlike the plaintiffs in *Browning* and *Fowler*,

Plaintiffs have detailed the precise nature of their losses, coupled with allegations showing that these losses were the natural and direct result of Giuliani's defamatory statements.

Finally, because of the ongoing harm Giuliani has caused to Plaintiffs, the losses Plaintiffs have suffered as a result of Giuliani's conduct become more specific over time and indeed have grown since the complaint was filed. Should the Court require even more specificity as to Plaintiffs' losses, Plaintiffs can amend their complaint to allege more details that have surfaced since Plaintiffs filed their complaint with the Court.

### C.   The Court has diversity jurisdiction over this dispute, and each Plaintiff has alleged an injury-in-fact.

The Court has diversity jurisdiction over this dispute because the suit is between citizens of different states, and the amount in controversy exceeds $75,000. *See* 28 U.S.C § 1332. Moreover, each plaintiff—U.S. Dominion, Inc.; Dominion Voting Systems, Inc.; and Dominion Voting Systems, Corp.—has alleged an injury-in-fact sufficient to confer Article III standing. Each plaintiff has suffered an injury that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Peacock*, 682 F.3d at 81. Although Giuliani referred to "Dominion" in many of his defamatory statements without specifying which division of Dominion, Giuliani's lack of specificity did not negate the injury to each plaintiff. Rather, Giuliani's lack of specificity amplified the injury to each plaintiff by defaming all divisions of Dominion when he referred to Dominion broadly. And the injuries suffered by Plaintiffs are "fairly traceable" to Giuliani's defamatory statements. *Id.* Finally, it is "likely," not "merely speculative," that a favorable decision from this Court will the injuries to Plaintiffs. *Id.* Accordingly, each Plaintiff enjoys Article III standing.

Giuliani suggests that Plaintiffs have inadequately pleaded the amount-in-controversy requirement. Not so. Plaintiffs have pleaded damages of "not less than $651,735,000," Compl.,

Prayer for Relief, far more than the amount-in-controversy requirement. Plaintiffs also pleaded that the damages meet the amount-in-controversy requirement for this Court's jurisdiction. Compl. ¶ 9. While Giuliani is correct that the party asserting jurisdiction bears the burden of establishing the amount in controversy, "the sum claimed by the plaintiff controls" if the claim is made in good faith. *Szymkowicz v. Frisch*, No. CV 19-3329 (BAH), 2020 WL 4432240, at \*4 (D.D.C. July 31, 2020). "Once the plaintiff makes a good faith claim, dismissal is warranted *only if*, 'it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)).

Giuliani suggests that "the Plaintiffs do not have prudential standing to recover *each other's* damages." Giuliani misconstrues Plaintiffs' complaint. U.S. Dominion, Inc., is suing for damages to U.S. Dominion, Inc.; Dominion Voting Systems, Inc., is suing for damages to Dominion Voting Systems, Inc.; and Dominion Voting Systems, Corp., is suing for damages to Dominion Voting Systems, Corp. The cases Giuliani cites are irrelevant. They hold that "a parent corporation cannot bring an action on behalf of its subsidiary." *Washington Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 270 F. Supp. 3d 158, 163 (D.D.C. 2017), *adhered to on denial of reconsideration*, 324 F. Supp. 3d 128 (D.D.C. 2018); *see also Sec. Indus. & Fin. Mkts. Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 407 (D.D.C. 2014).

But U.S. Dominion, Inc., is not seeking to bring claims on behalf of Dominion Voting Systems, Inc., or Dominion Voting Systems Corporation. Rather, all three Plaintiffs each suffered similar harm at Giuliani's expense and suffered the same types of alleged damages, which is why Plaintiffs' complaint defined the Plaintiffs using the common term "Dominion." That is also why all three injured Plaintiffs joined in this lawsuit. Rule 20(a) of the Federal Rules of Civil Procedure clearly allows the Plaintiffs to assert their rights to relief "jointly, severally, or with respect to or

arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). Plaintiffs have exercised that right here. Nothing about Plaintiffs' decision to assert their rights in the same lawsuit invokes the shareholder standing rule.

In sum, Plaintiffs adequately pleaded both the injury-in-fact and amount-in-controversy requirements for subject-matter jurisdiction. To the extent the Court would be aided by further detail in the complaint, Plaintiffs can amend their complaint to allege more detail regarding Plaintiffs' damages.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs urge the Court to deny Giuliani's motion to dismiss Plaintiffs' Complaint. In the alternative, and although unnecessary because the complaint already is well-pleaded and is more than sufficient to withstand Giuliani's motion to dismiss, to the extent this Court disagrees, it should grant leave to file an amended complaint.

Dated: May 5, 2021

SUSMAN GODFREY LLP

By: */s/ Stephen Shackelford, Jr.*
    Stephen Shackelford, Jr.

Of Counsel:

Justin A. Nelson
SUSMAN GODFREY LLP
1000 Louisiana Street, #5100
Houston, Texas 77002
(713) 651-9366
jnelson@susmangodfrey.com

Stephen Shackelford, Jr.
Elisha Barron
SUSMAN GODFREY LLP
1301 6th Avenue
New York, NY 10019
(212) 336-8330
sshackelford@susmangodfrey.com
ebarron@susmangodfrey.com

Rodney Smolla (*Pro Hac Vice* Forthcoming)
4601 Concord Pike
Wilmington, DE 19803
rodsmolla@gmail.com
(864) 373-3882

Thomas A. Clare, P.C.
Megan L. Meier
Dustin A. Pusch
Daniel P. Watkins
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7400
tom@clarelocke.com

16

Davida Brook                                    megan@clarelocke.com
Emily Cronin                                    dustin@clarelocke.com
Brittany Fowler                                 daniel@clarelocke.com
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
dbrook@susmangodfrey.com
ecronin@susmangodfrey.com
bfowler@susmangodfrey.com

Stephen E. Morrissey
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA  98101
(206) 516-3880
smorrissey@susmangodfrey.com

                                    *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of May 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/ Stephen Shackelford, Jr.*
Stephen Shackelford, Jr.