UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>RUDOLPH W. GIULIANI,<br><br>*Defendant*, | Civil Action No. 1:21-cv-00213-CJN |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT**

By: */s/ Joseph D. Sibley IV*

CAMARA & SIBLEY L.L.P.

Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701
Telephone: (713) 966-6789
Fax: (713) 583-1131
Email: sibley@camarasibley.com

**ATTORNEYS FOR RUDOLPH W. GIULIANI**

I.      **OVERVIEW AND SUMMARY OF REPLY POINTS**

Plaintiffs are Coloradan and Ontarian companies. Giuliani is a citizen of New York. The only connection D.C. has to Plaintiffs' claims is that, when the alleged defamatory statements were made, Giuliani was present in D.C. for at least some of the statements. Colorado—the only other state whose law could possibly apply here—applies the Anti-SLAPP statute in federal courts (*see Stevens v. Mulay*, No. 19-CV-01675-REB-KLM, 2021 WL 1153059, at *2, n. 7 (D. Colo. Mar. 26, 2021), unlike this District, which does not apply the D.C. Anti-SLAPP statute in federal court (*see Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 239 (D.C. Cir. 2021)). In their Complaint, the Plaintiffs specifically pleaded for the application of D.C. law to their sole consolidated defamation claim. Compl. at ¶ 183 ("**Dominion is entitled to punitive damages under D.C. law**…") (emphasis added). Based on Plaintiffs' allegations and invocation of D.C. law, Giuliani responded to the Complaint accordingly without filing an Anti-SLAPP motion under Colorado law,[1] and without challenging the venue or forum, and sought dismissal under D.C. law.

However, after pleading themselves into a D.C. forum with the benefits of D.C. law, Plaintiffs now conveniently seek to "cherry pick" themselves out of the ill effects of D.C.'s corporate libel law on damages. In their Opposition ("***Opposition***" [Doc. 28]) to Giuliani's Motion to Dismiss ("***Motion***" [Doc. 26]), Plaintiffs' claim that their invocation of D.C. law to the defamation claim in their Complaint was nothing more than a sidebar informative "note" is ludicrous. *See* Opposition at pp. 3-4. As discussed below, Plaintiffs should be bound by their live

---

[1] While the D.C. Circuit has held that the D.C. Anti-SLAPP law does not apply in federal court based on an *Erie* determination that the statute is procedural and not substantive, the D.C. Circuit has not held that the Colorado Anti-SLAPP statute is wholly procedural and, therefore, this Court (and the D.C. Circuit) would need to engage in separate *Erie* analyses for that respective statute.

pleading—having had, but declined, the opportunity to amend the Complaint as a matter of right—and the Court should apply D.C. law to Plaintiffs' sole count for corporate libel.

Moreover, the Opposition fails on other fronts. Plaintiffs have failed to demonstrate they have adequately pleaded their lost profits claim. Further, Plaintiffs wholly fail to explain how their "single injury" pleading demonstrates each Plaintiff has suffered over $75,000.00 in damages to create subject matter jurisdiction. Finally, contrary to Plaintiffs' unfounded conjecture, Giuliani does not "concede" the propriety of Plaintiffs' pleading on the unchallenged libel elements.

## II.     POINTS OF REPLY

### A. D.C. Law Should Apply.

Where a party pleads for the application of a forum's law, it may be deemed to have consented to the application of that state's law. *See Walter E. Heller & Co. v. Video Innovations Inc.*, 730 F.2d 50, 52 (2d Cir. 1984) ("[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied."). Conduct indicating consent can include reliance on legal authorities from the applicable forum state in pleadings. *See Schneider v. Canal Ins. Co.*, 1999 WL 689476, at *8 (E.D.N.Y. Sept. 1, 1999) (collecting cases); *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent ... is sufficient to establish the choice of law.'"); *accord Dexia Holdings, Inc. v. Countrywide Fin. Corp.,* No. 2:11-CV-07165-MRP, 2012 WL 1798997, at *4 (C.D. Cal. Feb. 17, 2012); *see also* 19 CHARLES A. WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 4506 (3d ed. Oct. 2020 update) ("[S]everal courts have held that the district court judge may forgo an independent choice-of-law analysis if the parties have agreed, either expressly or tacitly, as to which state's laws should control their case.").

3

Here, Plaintiffs pleaded for the application of D.C. law in their Complaint. Plaintiffs clearly consented to the application of D.C. law and should be bound by their live pleading. This is especially true in a case, such as here, where the defendant has acted in reliance on the allegations in the plaintiff's complaint to its detriment by not filing motions available to it under other states' laws and under other rules of procedure based on a plaintiff's choice of law. Giuliani consented to the application of D.C. law, citing authorities from D.C. in support of the Motion, creating an agreement of the parties to apply D.C. law. Plaintiffs forewent the opportunity to amend their Complaint to replead and, therefore, should be bound by their live pleading invoking D.C. law.

The Court is required to accept Plaintiff's allegations—including those invoking a forum's law—as true, not as mere "notes" apprising the Court of the existence of possible laws and relief that may apply to Plaintiffs' claims. Such an interpretation of Plaintiffs' pleading (which expressly discusses damages available under D.C. law) strains credulity at best. Plaintiffs clearly pleaded for the application of D.C. law to create jurisdiction, venue, and to avoid the application of a daunting Anti-SLAPP law. Plaintiffs should not be permitted to "pump fake" a pass into the D.C. end zone in their Complaint, only to then be allowed to "move the goal posts" to the end zone of other jurisdictions when faced with a motion to dismiss.

Indeed, it appears that Plaintiffs made a calculated decision to specifically reference D.C. law in connection with their punitive damages claims (Compl. at ¶ 183) since, under Colorado law, Plaintiffs would have been forbidden from including punitive damages in their initial pleading. *See Cahey v. Int'l Bus. Machines Corp.,* No. 20-CV-00781-NYW, 2020 WL 5203787, at *16 (D. Colo. Sept. 1, 2020) (striking the plaintiff's request for exemplary damages contained in the original complaint for failure to comply with COLO. REV. STAT. § 13-21-102(1.5)(a), which

requires a plaintiff to establish a *prima facie* case prior to seeking such damages)).  Plaintiffs wanted the "shock value" headline of a supposed billion-dollar case and thus chose D.C. law.

For these reasons, the Court should apply D.C. law.

### B.  D.C. Law Only Allows Lost Profits For Corporate Libel Plaintiffs.

Plaintiffs attempts to run from D.C. law on their libel damages are for good reason because, despite Plaintiffs allegations to the contrary in the Opposition, D.C. law does not allow a corporate libel plaintiff to sue for anything other than lost profits – whether or not the defamation is couched as *per quod* or *per se*.  In their Opposition, Plaintiffs attempt to cite several cases to explain away the problematic holding of *Martin Marietta Corp. v. Evening Star Newspaper Co.*, 417 F. Supp. 947, 955 (D.D.C. 1976), which expressly holds that corporations may not recover for reputational injury and may only recover lost profits.  Because Plaintiffs have failed to demonstrate the *Martin Marietta* holding does not limit Plaintiffs to lost profits and because Plaintiffs have, as discussed further below, failed to adequately plead lost profits, the Complaint should be dismissed.

Plaintiffs first rely on *Curtis Pub. Co. v. Vaughan*, 278 F.2d 23, 27 n.11 (D.C. Cir. 1960) and *Roper v. Great Atl. & Pac. Tea Co.*, 164 A.2d 478, 480 (D.C. 1960) for the "elementary" proposition that special damages need neither be pleaded or proven for a defamation *per se* claim. *See* Opposition at p. 5.  However, both of those cases were decided sixteen years before *Martin Marietta* and the string of 1970s First Amendment cases from the U.S. Supreme Court it relied on to reach its conclusion that corporate libel plaintiffs must prove lost profits.  *See Martin Marietta*, 417 F. Supp. at 954-56 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) and *Time, Inc. v. Firestone*, 424 U.S. 448, (1976)).  As such, these authorities do nothing to call into question the *Martin Marietta* holding.  In addition, both *Vauhan* (*see* 278 F.2d at 25) and *Roper* (*see* 164 A. 2d

5

at 479) are cases involving natural persons suing for defamation – not corporate plaintiffs. Therefore, these cases are completely inapposite.

Plaintiffs' post-*Martin Marietta* cases fare no better. In *Franklin v. Pepco Holdings, Inc. (PHI)*, 875 F. Supp. 2d 66, 68 (D.D.C. 2012) the plaintiff was also not a corporate plaintiff. The same is true of *Westfahl v. D.C.*, 75 F. Supp. 3d 365, 370 (D.D.C. 2014), *Sharratt v. Hickey*, 20 A.D.3d 734, 735, 799 N.Y.S.2d 299, 301 (2005), and *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004) which all feature natural persons as a defamation plaintiffs. Further, in *Grossman v. Goemans*, 631 F. Supp. 972 (D.D.C. 1986), although the case featured one natural person and the natural person's law firm (a professional corporation that bore his name, *see id.* at 972) as plaintiffs, the court still referred to them as "private individuals" (*id.* at 973). The *Grossman* court did not engage in any analysis of *Martin Marietta* or the recovery of damages as a corporate libel plaintiff – which would have only applied to one of the plaintiffs in any event. *See generally id.*

In addition, and although the *Grossman* court did not expressly engage in this analysis, since the law firm was a professional corporation, the court could have found that professional corporations—unlike general corporations such as Plaintiffs—bear the reputations of their professional shareholders, distinguishing the case from *Martin Marietta*. This conclusion is suggested by the *Grossman's* court's analysis of the defamation *per se* issue in observing that "[a]s attorneys, plaintiffs have a clear interest in maintaining untarnished reputations." *Id.* at 974. In short, there is nothing in *Grossman* that purports to qualify or abrogate the D.C. Circuit's holding in *Martin Marietta* with respect to corporate libel plaintiffs.

The first case Plaintiffs cite that is actually on point is *Metro. Opera Ass'n v. Loc. 100*, No. 00CIV3613LAP, 2005 WL 1712241, at *4 (S.D.N.Y. July 19, 2005). This is an unpublished case that construes the First Amendment differently than *Martin Marietta*, purporting to hold that

6

general damages are available to corporate libel plaintiffs absent a showing of special damages. *See id.* The case, however, is not controlling and conflicts with the D.C. Circuit's holding in *Martin Marietta*. Therefore, this authority should be ignored. Similarly, Plaintiffs' reliance on *E.I. Du Pont de Nemours & Co. v. Nashville Banner Pub. Co.*, 12 F.2d 231, 232 (6th Cir. 1926)—the only other case Plaintiffs cite that is on point—not only conflicts with the holdings of the D.C. Circuit, but was also decided decades before the seminal First Amendment holdings of the U.S. Supreme Court on which *Martin Marietta* is based.

Apparently realizing the weakness of their position, Plaintiffs then attempt to gaslight the Court on the actual holding of *Martin Marietta*. Plaintiffs suggest to the Court that even though *Martin Marietta* expressly states that "[t]he law of libel has long reflected the distinction between corporate and human plaintiffs by limiting corporate recovery to actual damages in the form of lost profits" (*see Martin Marietta*, 417 F. Supp. at 955) and even though subsequent cases have expressly construed *Martin Marietta* as a case standing for the proposition that corporate libel plaintiffs can only recover lost profits (*see Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1156 (D.C. Cir. 1985); *Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*, 909 F.3d 446, 461–62 (D.C. Cir. 2018)), that this is not actually the *Martin Marietta* holding and that it is really a "standard of fault" case. Giuliani is confident that the Court can determine the obvious frivolity of Plaintiffs arguments based on the plain language of these cases and, therefore, Giuliani will not belabor the point with arguments that would do nothing more than quote the opinions.

Contrary to Plaintiffs' assertions, Giuliani does not argue that *Martin Marietta* calls for a heightened pleading standard for defamation claims. However, because: (1) *Martin Marietta* limits the damages of a corporate libel plaintiff to lost profits and because (2) Rule 9(g) and its interpretive case law apply a heightened pleading standard to lost profits, therefore, *Martin*

7

*Marietta* creates a *de facto* <u>heightened pleading standard for damages for a corporate libel plaintiff</u>. In fact, the D.C. Circuit has recognized that *Martin Marietta's* limitation on corporate libel damages has essentially made the elements of corporate libel and injurious falsehood (product disparagement) coterminal since, prior to *Martin Marietta,* the only distinction between the two torts was that injurious falsehood required proof of special damages – a distinction obviated by *Martin Marietta*. *See Art Metal-U.S.A.*, 753 F.2d at 1156 (citing *Martin Marietta*, 417 F. Supp. at 955 to observe that "[t]he primary difference between injurious falsehood and defamation is the requirement in an injurious falsehood action of pecuniary harm […] Even this distinction is negligible, however; a corporation suing for defamation, for example, may only recover actual damages in the form of lost profits.") (additional citations omitted).

Moreover, Plaintiffs' attempts to distinguish *Martin Marietta* as not being a defamation *per se* case is unavailing. *Martin Marietta's* holding was with respect to corporate defamation plaintiffs in general and did not limit or qualify its holding as only applying to defamation *per quod* cases. *Martin Marietta* engaged in no discussion whatsoever regarding the distinction and, therefore, this Court should not limit the application of its holding. Moreover, given the accusations of criminal conduct at issue in *Martin Marietta*—procuring prostitutes (*see Martin Marietta*, 417 F. Supp. at 950)—*Martin Marietta* was clearly a defamation *per se* case. Accordingly, the Court should reject Plaintiffs' attempts to limit the application of *Martin Marietta's* holding.

Finally, *Martin Marietta* should apply to Plaintiffs' libel claim regardless of whether this Court rules that D.C. provides the substantive law of the case. *Martin Marietta's* holding on the availability of damages for corporate libel plaintiffs is not a recitation of any forum's law of defamation *per se*, but rather is this Circuit's law of the parameters of the First Amendment. *See*

8

*Martin Marietta*, 417 F. Supp. at 950 ("Consequently, a corporate libel action is not 'a basic of our constitutional system,' and need not force the first amendment to yield as far as it would be in a private libel action."). Therefore, regardless of what state's substantive law of defamation may or may not apply, the law of this Circuit applies to Giuliani's First Amendment rights, and this Circuit has held that his First Amendment rights "need not yield" any further than a corporate plaintiff's actual lost profits. For these reasons, and irrespective of choice of law, the Court should dismiss all of Plaintiffs' damages claims for non-lost profits under *Martin Marietta* and dismiss the lost profits claim for failure to properly plead, as discussed below.

### C. Plaintiffs Have Failed To Adequately Plead Lost Profits.

In their Opposition, Plaintiffs fail to explain how their Complaint adequately pleads lost profits. The Opposition references discussions of "projections" in the Complaint that supposedly show a $200 million loss over the next five years. *See* Opposition at p. 10 (citing Compl. at ¶ 135). The Opposition also references persons supposedly "deterred" from doing business with Plaintiffs. *See* Opposition at p. 10 (citing Compl. at ¶ 135). The Opposition further references supposed state legislators in states where Plaintiffs have contracts that have allegedly stated an intent to "review and reassess" contracts with Plaintiffs. *See* Opposition at p. 11 (citing Compl. at ¶ 132).

But this is woefully insufficient. Rule 9(g) requires that—at a minimum—lost profits be pleaded by disclosing specific customers lost or facts showing an established business and the amount of sales before and after the disparaging publication. *See Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002). Here, Plaintiffs have done neither. **They have not even alleged they lost a single contract as a result of Giuliani's statements**. Instead, they have alleged that Giuliani has put their contracts in "jeopardy", has "deterred" third parties, and caused certain states to "reassess" contracts with Plaintiffs. In other words, Plaintiffs allege they *might* lose profits

9

because of Giuliani. Plaintiffs' damages are nothing more than speculative at best and are not yet ripe given that Plaintiffs cannot identify a single contract lost or a single third party who has refused to enter into a contract with them based on Giuliani's alleged defamatory statements.

Moreover, Plaintiff's "projections" of lost profits is conclusory and provides no details on their basis. Projected lost profits are insufficient. Plaintiffs must demonstrate *actual* lost profits based on before and after revenues. Given that Plaintiffs have not pleaded that they have lost any contracts because of Giuliani, they surely cannot plead that there has been a drop in sales after Giuliani's alleged defamatory statements. Because Plaintiffs have not pleaded any amounts of sales actually—as opposed to potentially—lost after the alleged defamatory statements were made, they have utterly failed to satisfy Rule 9(g)'s heightened pleading standard on lost profits.

Finally, as to the other special damages, they are unavailable to Plaintiffs under *Martin Marietta*. Plaintiffs' however, once again, call into question *Martin Marietta* by arguing they are not required to plead and prove special damages and cite *Airlie Found., Inc. v. Evening Star Newspaper Co.*, 337 F. Supp. 421, 431 (D.D.C. 1972) in support. However, like so many other authorities Plaintiffs rely on in the Opposition, this case was decided before *Martin Marietta* and the seminal Supreme Court decisions on libel law and, therefore, its holding on availability of presumed damages for corporate libel plaintiffs is not good law. Plaintiffs have failed to adequately plead lost profits with the requisite specificity and, therefore, their Complaint should be dismissed.

### D. Plaintiffs Failed To Demonstrate They Each Pleaded A Distinct Injury.

Plaintiffs argue that although they pleaded their entire singular claim as "Dominion" that they nevertheless are really only seeking their own particularized damages unique to each Plaintiff and are not seeking to recover one another's damages. *See generally* Opposition at pp. 14-16.

10

While Plaintiffs' assurances are comforting, they are insufficient to overcome the glaringly obvious pleading deficiencies in the Complaint. Plaintiffs have pleaded one solitary exorbitant sum of "not less than $651,735,000". But Plaintiffs have failed to delineate how much in damages each individual Plaintiff has suffered in supposed reputation injury and alleged special harm.

This is a necessary requirement to determine whether each Plaintiff has satisfied the amount in controversy requirement for diversity—and thus subject matter—jurisdiction. Plaintiffs argue that they can somehow claim a singular damages model without specifying what damages are claimed by what Plaintiff based on a misinterpretation of FED. R. CIV. 20(a). That Rule governs the permissive joinder of parties where the parties assert joint rights or where there are common questions of law or fact. *See id.* However, this is not an issue of joinder. Giuliani does not dispute whether the Plaintiffs can bring their claims in one action, but rather whether each Plaintiff has a distinct injury that satisfies the amount in controversy requirement to create diversity jurisdiction.

Nothing in Rule 20(a) abrogates the amount in controversy requirements for diversity jurisdiction. In fact, there is a well-established rule against aggregating the claims of multiple plaintiffs to satisfy the amount in controversy requirement. "When calculating the amount in controversy for purposes of this statute, it is well-established that 'the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement.'" *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp.3d 26, 31 (D.D.C. 2014) (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969)); *accord Georgiades v. Martin–Trigona*, 729 F.2d 831, 833 (D.C. Cir.1984) ("Separate and distinct claims, regardless of whether they share a community of interest or originate in a single transaction or event, may not be aggregated to satisfy the jurisdictional amount-in-controversy requirement").

11

Despite Plaintiffs assurances in their Opposition, their Complaint, at best, shows the Plaintiffs' aggregated claims may satisfy the amount in controversy requirement. But Plaintiffs cannot demonstrate Article III standing by demonstrating they meet the amount in controversy requirement collectively. They were required to each specifically plead a plausible damages theory showing that each one of the Plaintiffs has a claim for relief for more than $75,000.00. Because they failed to do so, their claims should be dismissed.

### E. Giuliani Has Not Conceded That Plaintiffs' Complaint Is Otherwise Well-Pleaded.

Finally, despite Plaintiffs conjectures, Giuliani has not—by only challenging certain of Plaintiffs' pleading deficiencies—conceded that Plaintiffs have otherwise sufficiently pleaded their defamation claims. Giuliani reserves his right to challenge Plaintiffs' Complaint in all respects should the Court deny his Motion. Giuliani should not be required to spar with each of Plaintiffs' unnecessarily voluminous allegations unless and until Plaintiffs can demonstrate that they can even make their fighting weight to be in federal court. Plaintiffs' assertions that Giuliani has "conceded" their Complaint is otherwise well-pleaded is specious and should be ignored.

### III. CONCLUSION

For all of the reasons discussed herein and in the Motion and Memorandum in Support, the Court should dismiss the Complaint for lack of subject matter jurisdiction, failure to state a claim, and failure to properly plead damages.

Respectfully submitted,

By: */s/ Joseph D. Sibley IV*

CAMARA & SIBLEY L.L.P.

Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701
Telephone:  (713) 966-6789
Fax:  (713) 583-1131
Email:  sibley@camarasibley.com

**ATTORNEYS FOR RUDOLPH W. GIULIANI**

### CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2021, I electronically filed the foregoing motion—together with the accompanying proposed order and memorandum of law—with the Clerk of the Court using the CM/ECF system, which I understand to have caused service on all counsel of record.

*/s/ Joseph D. Sibley IV*
Joseph D. Sibley IV